James Nukas Jr. May it please the court, my name is James Nukas Jr. I'm privileged to be here today representing Scott Holton, along with my associate and son, James Clayness Nukas. This case is about Mr. Holton's removal as an employee at the Portsmouth Naval Shipyard where he was a crane team supervisor, a rigor supervisor. There was an accident in a crane evolution and as a result of that accident, he was wrongfully drug tested. Because the drug test was positive, he was removed. We are here today to argue on several counts that the test was not authorized and was not legal. Are you making a constitutional argument? The constitutional argument weaves in to the interpretation of the regulation. The controlling regulation in this case is the Portsmouth Naval Shipyard post-accident drug test ordinance. It specifically provides that an employee can be tested if their actions are reasonably suspected of having caused or contributed to the accident. The constitutional argument comes in with the interpretation by the Merit System Protection Board, which changed that standard. The standard they've employed says that the proper standard on the PNS rule is whether the agency had a reasonable suspicion that the appellant could have caused or contributed to the accident. This dramatically changes the standard in the regulation and the interpretation of the regulation under the Constitution. Let me tell you what my concern is. The Skinner case in the Supreme Court recognizes that these drug tests typically have to be done quickly or the evidence is going to disappear. A judgment has to be made pretty much on the spot before the end of the day that a drug test is warranted. Would you agree with that? Yes, but Skinner did that based on the fact that there was a specific regulation that said anybody directly involved in the accident could be drug tested. Now, that was in an industry where it was regulating the railroads, a pervasively regulated industry, where there are serious accidents resulting in personal injury, death, or property damage. Hundreds of years of abuse, of alcohol abuse, and it found in that scenario that drug testing those directly involved was permissible. So the question is, you know, in terms of what the people ordering the drug test have to know, there's a limited ability to investigate the accident if you're confined to the same day of the accident and they have necessarily to go on incomplete information, right? And what the courts have said in that somewhat exigent circumstance is there needs to be a balancing between the government's interest and the individual's interest in their expectation of privacy. And Skinner has been interpreted, and we cited the case of USV Plain, which did a wonderful job of reviewing a litany of cases that involved this issue. And in balancing that interest, the court has said that the government interest is diminished as the harm resulting from the accident is lesser, and the expectation of privacy goes up. I understand, but I mean, if they do have to make on-the-spot judgments, they're necessarily going to have to make the judgment based on incomplete information. Here we have a situation in which your client was the supervisor of the overall operation, and he had absent himself from the scene to go down to the submarine, and he couldn't see the crane at the time. He also had the obligation to brief the team at the outset. But certainly under those circumstances, it could be, couldn't it, that his actions caused or contributed to the accident? If he'd been, for example, next to the crane, he might have seen that the load was not between the rails as it should have been. That very question was asked of Mr. Thayer, who was making the decision that evening. Mr. Thayer, what was it that he did that in any way caused or contributed to the accident? Mr. Thayer said exactly that. Well, he could have been in the right position, and he could have prevented the accident. But Mr. Thayer also agreed that that was pure speculation. Well, he used the word speculation, but he did seem to say that if Holton had been next to the crane, that as an experienced supervisor, he could have seen that something was wrong and prevented the accident. What the cases say in USV Plain very clearly is that it's not could have, which is what the board used. There must be some direct connection between the conduct of the employee and the accident. They say specifically that the conduct has to be, have to attribute either cause the accident or appear to have caused the accident or contribute or trigger. His absence from the scene could have contributed to the accident, right? But, Your Honor, critical to the factual determinations made that evening, number one, Banks and Thayer didn't even know they were required to find reasonable suspicion, right? That's very clear in the record. But what they did find, what Thayer says that he knew, is that Mr. Holton was down here. The accident happened up here on the other side of a six-story building. Mr. Thayer testifies that from the evidence he gathered, he believes that Mr. Holton properly briefed the team before the evolution began. He didn't know that at the time. Yes, he did. Well, show me where he says he knew it at the time. He testified to it, and I'll pull it out while I'm waiting for rebuttal. But he knew that at the time. He testified that he knew that Mr. Holton was on the other end of the shipyard or the other end of the dry dock and that he was authorized to be there. He also said that if it had been him, he wouldn't have done that. That's discretionary. Mr. Thayer's own policy at the shipyard, the blue and gold policy, says specifically that you have blue and gold. A gold hat is the supervisor. The blue hat is the rigger in charge. The way the procedure works is the gold hat briefs the crew. If it's not a complex lift, and this was not a complex lift, then he appoints a rigger in charge, who's a specifically trained and authorized person, to take over the crane evolution. And that happened in this case. And the rigger in charge started to proceed with a portal crane around. You mean that if the supervisor saw that the load was improperly not between the rails, he should shut up and not do anything about it if he's standing there? He couldn't see it, Your Honor. I understand that, but if he were standing there, I don't understand the blue and gold theory. Surely, if he were standing there, he would have done something about it. He could have, Your Honor. That's the board standard. That's not the law under Skinner and USV Plain. But aren't we supposed to take into consideration that they do have this crane team concept where all members of the team are supposed to act together? Yes, but that is not a work rule. That's a work philosophy concept. In terms of the triggering event, what they need to look at at that moment is causation. The crane team concept is not a concept of causation. It's a concept of responsibility. It's like the three musketeers. If one of us are involved, we're all involved. That's not what our Constitution says. Rennie Trombley, who was the drug program coordinator, will tell you, it testified that the instruction did not provide that the whole team could just be tested like that. There had to be reasonable suspicion. And in this case, you know, it's not that Mr. Holton was errant in doing what he did. Mr. Thayer testified that he was fully authorized to do what he was doing. Well, that's my problem. See, I'm not sure that at the time that it's possible to make these judgments about fault. You have to go on incomplete information that's available at the time. And the fact that he certainly was reasonable to think the fact that he was absent from the scene could have contributed to the action. Now, maybe he wasn't at fault. Maybe ultimately it will be determined that he wasn't at fault for being absent from the scene. But at the time, maybe they don't know that. But Mr. Thayer knew he was authorized to be where he was, doing what he was doing, because of Mr. Thayer's own blue and gold policy, which says we don't want both hats there, because that will confuse the crane operator and the crane walker. So you only want one person of authority there. So for you to prevail, would we have to adopt the principle that there is not supervisory responsibility unless certain events take place, such as the supervisor being on the scene? I don't think that you have to go that far. I think, you know, you have to look at the facts, when it happens, what was known, and you judge whether or not there can be a drug test based on those facts as they were known. And those facts did not establish, you know, reasonable suspicion that he caused or contributed to the accident. Just because he's a supervisor doesn't mean he could have. You have to determine whether he did, in fact, cause one of the triggering events. Is he reasonably suspected of causing one of the events? The board didn't find that. The board found that, oh, he briefed him, and he was actively involved. Well, if you look at the cases under U.S. Steel, I'm sorry, U.S.V. Plain, that is not what those cases say. They have enjoined regulations that would allow that. Fault and causation are not necessarily the same thing. Are you contending that there has to be a reasonable suspicion of fault at the time? No, no, absolutely not. Reasonable suspicion that he caused or contributed to the accident. But not fault. But not fault. Cause or contributed, again, as interpreted in the case law, is that triggering event that would, you know, likely cause the accident. So it's causation. Team concept is not causation. Fault is not causation. I mean, the whole shipyard can be held responsible for the fact that there's a crane accident. Okay. Let's hear from the other side. We'll save some rebuttal time. Thank you.  Thank you, Your Honor. May it please the Court. The Court should affirm the decision of the Merit System Protection Board because the Board correctly found the Navy's administration of the drug test was consistent with the Fourth Amendment and the shipyard's drug testing instruction, and that it was not a due process violation for the individual who authorized the urinalysis to serve as the deciding official. As an initial matter... The government has abandoned the principle of random tests. Don't they have to show some relationship between the presence or absence on the scene in order to bring the supervisor within the scope of the regulation? Your Honor, this test dealing specifically with the post-accident drug testing, the regulation at issue in this case does say that the individual should be, or the employee should be, reasonably suspected of having caused or contributed to the accident. And that threshold was met in this case and is supported by substantial evidence. But didn't Thayer say that he knew that he wasn't in a position to have altered what occurred here? Yes, Your Honor. Mr. Holton was down at the other end of the docks. But specifically with regard to the blue and gold policy that Mr. Holton's counsel keeps referencing to, there could be the rigor and charge could take on a greater role. However, that policy specifically states that the rigor and charge could be left unless at the point of most risk. In this case, that curve, that pivotal junction where the crane was moving, was the point of most risk. Mr. Thayer also testified that he would have followed the crane. He was in that position and that it would have been his preference that the supervisor in this particular case would have stayed with the crane because he has that unique ability to step back. But he had no obligation to stay with the crane. He said that he knew that he properly briefed the crew, right? Yes, Your Honor. Well, he said that he knew he briefed the crew. He wasn't aware at that time whether he properly briefed the crew. However, he did state that while Mr. Holton didn't violate necessarily any rule or regulation, the policy number 51 does allow for a rigor and charge to take more responsibility at some point. And the supervisor could leave for minimal periods of time unless you're at the point of most risk. And it was established through Mr. Thayer and Mr. Banks in this case that the crane movement behind Building 343 was the most critical juncture and was the point of most risk in this case. So even though Mr. Holton's counsel continues to cite the policy number 51, there it specifically states that the supervisor should be following the crane at the point of most risk, which is where the accident occurred in this case. Is it the same thing to say that you need reasonable suspicion that someone caused or contributed to an accident? And to say that I can then say if I think that had they been somewhere else, they might have helped prevent it, that that's the same as causing or contributing to it? Your Honor, looking in this case, in this specific unique nature of the crane team, the 11-member team where each member of that team had a specific responsibility in the lifting and handling. And specifically the supervisor in this case has the responsibility for safety, personnel, and equipment and has that responsibility of stepping back and being able to identify particular safety issues or equipment issues. Had he been in the right place, Mr. Thayer testified that he likely would have seen this and he could have prevented it. So making the decision to place himself at a point where he's not able to follow the crane, not able to step back and have those cross-checks, he did cause or contribute to the accident in this case. And the agency had the specific causation nexus as well as the triggering events of damage over $10,000. With regard to Mr. Holton's argument that the board applied the wrong standard when looking at whether or not there was causation in this case, we would argue that argument is waived because it was not raised in the principal brief. Mr. Holton's principal brief was based on establishing or arguing reasonable cause or that the reasonable suspicion was not apparent. He did not argue that the board applied the wrong standard. In addition, the cases cited by Mr. Holton draw no meaningful distinction between may have caused, contributed, or caused. Do you agree that if we were to apply the thoughtful district court decision in Plain that we would have to say that even if the regulation could pass muster on its face here, its application in these circumstances was not constitutional? No, Your Honor. Plain is not relevant in this case. In that particular case, the only reason I referenced it was they have a specific citation in that case to say the Fourth Amendment requires may have caused. That regulation was ultimately overturned because it had the language involved in and applied to all employees. This case is more akin to Skinner where you have a unique set of employees who are operating under safety and great risk so they have a reduced expectation of privacy. The government's interest in this case is compelling because they are there to find out what caused this accident, why did this accident occur, and to prevent it in the future. If you can't test everybody who is involved in an accident, how do you test people who weren't actually involved in the accident? Your Honor, I apologize if I misunderstood the question. In this case, the test was for all of the employees who were involved in the accident. That goes back to the unique crane team concept in this case. The trouble I have is if you look at Skinner, there seem to be two different standards that they apply to major accidents and non-major accidents. For the major accidents, which this wouldn't fall into that category, it talks about directly involved. That's what the regulation provided there. Then this other standard, which must be somewhat looser, is caused or contributed to. This is kind of mushy, but it looks as though they were applying a directly involved standard rather than a caused or contributed standard. Your Honor, in Skinner, there were the two separate regulations that were at issue. The direct involvement that mandates the testing for all of the employees that were involved. First, the permissive regulation, which allowed testing based on the reasonable suspicion the employee contributed to the accident. The regulation at issue in this case is more akin to the second regulation in Skinner, which required the reasonable suspicion of the employee having contributed. Therefore, because the language... Would you agree that under Skinner, the notion that you should test everybody involved in an accident of this type would not be consistent with Springer, and that you're arguing that while that may be true, it was reasonable to test the supervisor? Your Honor, I believe what I'm saying is that the regulation is consistent with Skinner. The regulation may be, but the notion of testing everybody involved in the accident seems to be applying the first Skinner test for major accidents directly involved. Yes, Your Honor. It seems to me it's questionable as to whether that's the appropriate standard for a minor accident like this or a non-major accident. Yes. But at the same time, would you agree with that? Yes, Your Honor. The cases coming after Skinner have more narrowly tailored the causation analysis, and that's evident from the instruction in this case where they did require the causation analysis. So what I'm asking is, while it may be that the agency isn't entitled to test everybody who was involved in the lift, your position is that because of the peculiar circumstances of the supervisor, Holton, there was reasonable suspicion to test him. Your Honor... Is that a fair statement? It is a fair statement, Your Honor. However, in this case, with the unique concept of the crane team concept and that each of the 11 individuals did have a particular role... I'm not sure about that, but go ahead. ...that the agency did have a reasonable suspicion to test the entire team. However, in particular, the agency had the reasonable suspicion that the supervisor caused or contributed to the accident. How do we conclude that they actually determined that they had reasonable suspicion when both of the decision makers didn't know they had to have reasonable suspicion? Your Honor, in the record, it's clear that Mr. Banks and Mr. Thayer walked through the instruction together and determined what was necessary. They thought they needed the $10,000 worth of damage in a police report, and that was it. And, Your Honor, they walked through and discussed the crane team concept, and Mr. Banks specifically says all members were involved. So the record shows that Mr. Banks and Mr. Thayer were aware that there was a causation element that was required because they walked... ...that there was nothing improper about his doing whatever he was doing at the other end of the dock while the crane was moving. Yes, Your Honor. Mr. Thayer did testify that Mr. Holton was not in violation of a regulation or a rule at that point in time. However, Mr. Thayer also testified that it is the responsibility of the supervisor to be at the critical juncture pursuant to a policy... Well, if it was his responsibility, then there was a violation. If there was no violation, how could it have been his responsibility? The supervisor has the responsibility for the overall safety of the team. That's a different principle, that the supervisor is always responsible no matter what. That is what I think we have before us. I just wanted to be clear that the evidence was uncontradicted that he had done nothing wrong or irresponsible or anything else by doing whatever he was doing at the other end of the dock. Your Honor, while Mr. Holton didn't violate a policy, you're correct, Your Honor, Mr. Holton made the decision to leave and go to a point on the dock where he couldn't see the crane, he couldn't see his team, and he couldn't step back and see the overall picture to make the call that if there was an improper rigging or if the crane was coming off the track. And Mr. Thayer testified that had he been in the position where Mr. Thayer assumed he would have been as the supervisor, he could have prevented this accident. Is there a difference between being contrary to a regulation or policy and being contrary to best practices? Your Honor, with respect to if I understand Your Honor's question, yes, there is a difference. While he wasn't in violation of the policy, he still made a bad decision and did not place himself in a part of the dock where he could observe the accident or could have prevented the accident. It would be one thing if you were sitting here and arguing that his employer had a right to discipline him for not engaging in best practices, but that's a very different question than whether or not the Fourth Amendment would allow this kind of intrusive search, right? Yes, Your Honor. And here, while he was not in violation of the policy, there was definitely enough to have a reasonable belief that he caused or contributed to the accident through his action or inaction. And so the agency rightfully administered the drug test in this case. So you're not arguing that there's nothing wrong with the policy, that the whole team is given a drug test, that it must be established that maybe had he been doing something else, he might have averted this accident. Your Honor, in this particular case, the entire crane team did have involvement and did contribute to the accident. As I stated, each individual had a specific role. And I believe during Mr. Thayer's testimony, he called it a switch role or I equate to checks and balances. Let's take a hypothetical. Suppose one member of the team has a responsibility to make sure the crane isn't moving too fast. And his whole job is to measure the speed of the crane and make sure it stays under two miles an hour or something like that. In these circumstances, could that person reasonably be tested? Could there be reasonable suspicion that that person contributed to the accident? If I understand your question, Your Honor, yes, there would be a reasonable suspicion that the individual... I think that's a pretty hard argument to make, that somebody whose sole responsibility was to watch the crane and determine how fast it was going and the crane wasn't going too fast can still be tested. That seems to be difficult. Yes, Your Honor, but in this... So what I'm suggesting to you is that this team concept may just go too far. Yes, Your Honor. I think, again, it has to go back to the unique aspect of the crane team, as Mr. Banks and Mr. Thayer testified, and that each of the individual crane members received teaching on that aspect of this crane team concept, and in particular with Mr. Holton as the supervisor. I see my time is running out. Let me just ask you one question. Just to be absolutely clear, the government's position is not that the supervisor is always responsible no matter what, that some link needs to be shown? Yes, Your Honor. Okay. And in this case, that link was shown. Okay. Any more questions? Thank you. Briefly, Your Honor, a couple of pieces of testimony and understanding of what was going on that's important. There are regulations that say if it's a complex lift, which is based on size and weight and those sorts of things, then the supervisor cannot lead the evolution. This was not a complex lift. Again, he was doing what he was permitted to do, and he wasn't goofing off. He was over-preparing the landing area to put down the 60,000-pound pod. Interestingly, Mr. Thayer testified that crane team supervisors cannot be everywhere at the same time. They have to make choices. In this case, Mr. Holton made a choice that was consistent with the policy's responsibility and his discretion. It's also important to note that this crane team with the same crane operator had been doing the same evolution. How is it that the record showed here that Mr. Holton had exercised bad judgment in being where the pod was going to be put down instead of being at the point of maximum risk? Let's just give me a hypothetical. That's a hypothetical. That's what the evidence showed. Would that create reasonable suspicion? I don't think so. I think under the triggering event standard, it has to be more than that. There has to be a greater connection. Why is that not enough? Because it doesn't go far enough in connecting him to that. Again, I'm having trouble with the hypothetical because I'm not dealing with a hypothetical. But omissions could be contributing. Well, omission could be. This was not an omission. This is clearly not an omission. The crane team, and this is in the record, the crane team had been doing these moves, exact same move, over the course of the prior two weeks. On 12 to 15 occasions, they had performed the same evolution without a problem. So you're saying it's okay to come to work as a crane operator supervisor. It's okay to come to work high on dope as long as someone else causes the accident? There's no evidence that he was high on dope, Your Honor. There's no evidence that he was under the influence. He tested positive, and it was a pretty high level, wasn't it? That's in the record? You don't get to look behind the curtain. You have to determine first whether or not the drug test is permissible. Only then can you look at whether he was high or not. Certainly there should be a strong possibility that people should not be under the influence. But before you can determine somebody is under the influence, you have to have the right to drug test them in the first place. Keep in mind also that Mr. Thayer testified that after his initial review of what transpired, the only person that he thought should be drug tested was the crane operator. Mr. Banks, who was the second approval on this, had no idea Mr. Holton was even involved in this matter. They say they relied on the crane team concept. Take a look at Mr. Thayer's statement at page 249, 250 of the appendix. He doesn't mention the crane team concept. That only came up in their testimony at trial almost a year later. I think the crane team concept is even fabricated and not appropriate. Do you have no further questions? Any more questions? Okay, thank you. Thank you both. Thank you very much for indulging us. Thank you.